Clifford A. BUCHHOLZ and Audrey Passe, Plaintiffs,

v.

RURAL COMMUNITY INSURANCE COMPANY, Defendants.

No. 05–C–0115–C.

United States District Court, W.D. Wisconsin.

Nov. 28, 2005.

Daniel R. Freund, Eau Claire, WI, for Plaintiffs.

Stephen Sinnott, Acting U.S. Attorney, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

In this action for monetary relief, plaintiffs Clifford A. Buchholz and Audrey Passe contend that defendant Rural Community Insurance Company acted in bad faith and breached its insurance contract with plaintiffs when it failed to reimburse them for crop losses. Although the parties have proposed no facts establishing jurisdiction, plaintiffs allege in their complaint that they are citizens of Wisconsin and that defendant is a Minnesota corporation with its principal place of business in Anoka, Minnesota. In its answer, defendant admits these facts. Therefore, I find that jurisdiction exists under 28 U.S.C. § 1332. The case is before the court on the defendant's motion for summary judgment.

Before turning to the facts, I note that defendant failed to follow this court's procedures for summary judgment. Initially, it did not file proposed findings of fact in support of its motion for summary judgment. In response to plaintiff's proposed findings, defendant submitted proposed findings of its own; however, those submissions lack many of the facts that form the basis for the arguments in defendant's brief. For example, defendant failed to propose facts regarding the content of the insurance application plaintiff Passe signed and the policy that was issued to her. However, defendant did authenticate and submit these documents. Because their content is undisputed and because their terms are relevant to many of the claims at issue in this case, I will consider them in ruling on defendant's motion.

Although defendant issued plaintiff Passe a policy reinsured under the Federal Crop Insurance Act, federal law does not pre-empt the state law causes of action plaintiffs raise in this case. Therefore, two questions must be resolved: (1) What type and amount of crop insurance coverage did defendant's agent believe he was issuing to plaintiff Passe and (2) did plaintiff Passe own any portion of the crops insured by the policy? Although plaintiffs face an uphill battle in proving their claims, defendant's motion for summary judgment will be denied because material facts remain in dispute.

From the parties' proposed findings of fact and from the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiffs Clifford Buchholz and Audrey Passe are unmarried adult residents of Buffalo County, Wisconsin. Plaintiffs jointly operate several business enterprises, including a farm and a motel. Plaintiff Buchholz is responsible primarily for the farming operation and plaintiff Passe is responsible primarily for the motel. Plaintiffs have not formed a corporation. At all times relevant to this case, they maintained a joint checking account for the farm operation and were obligated jointly on a loan that financed it. They each reported a portion of the farm enterprise income on their individual tax forms.

Defendant Rural Community Insurance Company is an insurance company engaged in the business of selling and servicing crop insurance under the federal crop insurance program. Defendant is one of several companies that provide crop insurance in Buffalo County.

Under the federal crop insurance program, the Federal Crop Insurance Corporation pays defendant to service crop insurance policies issued to farmers. The program subsidizes a portion of each farmer's premium and typically pays a portion of each farmer's loss. Payments made by the Federal Crop Insurance Corporation are governed by law and by the Standard Reinsurance Agreement, which is a financial assistance agreement that contains the terms and conditions under which the Federal Crop Insurance Corporation will provide premium subsidies, expense reimbursements and reinsurance on multiple peril crop insurance sold or reinsured by the Federal Crop Insurance Corporation and its implementing regulations. Section II(A)(1) of the agreement states: "Only eligible crop insurance contracts will be reinsured and subsidized under this agreement."

Crop Revenue Coverage policies guarantee that participating farmers will earn a specific amount of revenue on their insured farms by providing coverage when farmers fail to obtain specified yields on their crops. The yield guarantees are based either on average county yields or the participating farmer's actual yield history.

Several years ago, plaintiff Buchholz was placed on the "ITS" list issued by the United States Department of Agriculture, Risk Management Agency. The list contains the names of people who are ineligible for crop insurance. Plaintiff Buchholz appealed his placement on the list. On August 30, 2002, the United States Department of Agriculture National Appeals Division ruled that plaintiff Buchholz had been placed on the list in error. Nevertheless, plaintiff Buchholz's name remained on the list into the spring of 2003.

On December 6, 2002, plaintiff Buchholz signed an application for crop insurance with defendant through its agent, Vine Vest, LLC, on crops to be grown during the 2003 crop year. On or before February 19, 2003, Vine Vest contacted plaintiff Buchholz and informed him that he was still listed on the ITS list as ineligible for crop insurance. Plaintiff Buchholz explained that the National Appeals Division had ruled in his favor, holding that his placement on the list had been a mistake.

On February 19, 2003, Vine Vest representative Jay Nichols met with plaintiffs. At that meeting, plaintiff Buchholz cancelled his application for crop insurance and plaintiff Passe signed an application for crop insurance. A section on the form entitled "type of entity" directed applicants to check a box from among the following options: individual, spousal, landlord/tenant, partnership, corporation, estate, trust, government, religious/educational, undivided, enterprise, market/job

and joint operation. Plaintiff Passe checked the box marked "individual." The application contains the following directions: "For individual entities, if applicable, indicate spouse's name and s[ocial] s[ecurity] n[umber]. For other insured entities, list all persons or entities with 10% or more interest in the applicant." Plaintiff Passe's application made no reference to plaintiff Buchholz and did not state that there was a shared interest in the crop.

Plaintiff Passe's application was accepted and defendant issued a crop revenue coverage policy. The first paragraph of the policy states:

This policy is reinsured by the Federal Crop Insurance Corporation (FCIC) under the authority of section 508(h) of the Federal Crop Insurance Act, as amended (7 U.S.C. 1508(h)). All provisions of the policy and rights and responsibilities of the parties are specifically subject to the Act. The provisions of the policy may not be waived or varied in any way by the crop insurance agent or any other agent or employee of the FCIC or us.

The policy states that acreage is insurable if it is planted to the insured crop in which the applicant has a share. A share is defined by the policy as an applicant's percentage interest in the insured crop as an owner, operator or tenant at the time the insurance attaches. The policy states, "Insurance will only attach to the share of the person completing the insurance application and will not extend to any other person having a share in the crop unless the application clearly states that the insurance is requested for an entity such as a partnership or a joint venture." The policy premium was calculated for 100% of the crop owned by plaintiffs. (The premium was later refunded to plaintiff Passe.)

During the fall of 2003, plaintiff Buchholz supervised the delivery of plaintiffs' corn and soybean harvest to granaries. In some cases, plaintiff Buchholz delivered the products himself. The granaries documented the deliveries and named plaintiff Buchholz as the "seller" or "vendor" of the crops.

Following the fall 2003 harvest, plaintiff Passe signed a claim loss form seeking coverage under defendant's policy. An insurance adjuster met with plaintiff Buchholz regarding the claimed crop losses, which totaled $184,149. Plaintiff Passe was not present at this meeting. The adjuster reviewed documents produced by the granaries that named plaintiff Buchholz as the seller. The adjuster did not voice concerns about the documentation.

Some time following plaintiff Buchholz's meeting with the insurance adjuster, defendant informed plaintiffs of a problem with plaintiff Passe's claim because she was not listed as the seller in the granaries records. At approximately the same time, one of the granaries to which plaintiffs sold their crops changed its records to reflect that plaintiff Passe had sold the crops.

On March 1, 2004, defendant denied plaintiff Passe's claim, stating that the production records supporting the claim were "not in [Passe's] name." Plaintiffs met with one of defendant's representatives and explained that they farmed jointly. At the meeting, plaintiffs supplied defendant with documentation of their joint farming operation, including bank statements for their joint farm account, documents relating to their joint bank loan and a farm security agreement signed by both plaintiffs. On March 12, 2004, without further explanation, defendant informed plaintiffs that the claim would remain denied.

## OPINION

Defendant contends that summary judgment should be entered in its favor on

plaintiffs' claims of breach of contract and bad faith because (1) plaintiff Buchholz has no contract with defendant and (2) plaintiff Passe did not own the crops she sought to insure. Although plaintiffs acknowledge that the insurance policy was taken out in plaintiff Passe's name only, they allege that defendant's agent led them to believe the policy would cover 100% of their crop shares. Therefore, they argue, defendant should be estopped from denying coverage or, in the alternative, the policy should be reformed to cover plaintiffs' entire crop loss. At the very least, plaintiffs argue, defendant should be liable to plaintiff Passe for its failure to reimburse her for her share of the crop loss.

### A. Preemption

■ Defendant appears to argue that plaintiffs' request for contract reformation or for estoppel under state common law is preempted by the Federal Crop Insurance Act. Federal law can preempt state law in two ways: explicitly or through actual conflict. A conflict will be found when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988) (internal citations omitted).

The Federal Crop Insurance Corporation has devised specific rules governing applications for federal crop insurance. These regulations do not prevent farmers from insuring 100% of a crop owned by more than one farmer. However, the rules do require farmers with a shared interest in a crop to disclose the form of the shared interest (partnership, corporation, enterprise, etc.). Defendant implies that the Federal Crop Insurance Act bars any equitable remedy that would allow plaintiffs to receive full coverage for a joint

venture they failed to disclose in accordance with federal regulations.

Although the Court of Appeals for the Seventh Circuit has not addressed whether the Federal Crop Insurance Act preempts state law causes of action, many other circuits have done so. Almost unanimously, they have found no preemption. *See, e.g., Williams Farms of Homestead, Inc. v. Rain and Hail Ins. Services, Inc.*, 121 F.3d 630, 635 (11th Cir.1997) ("Congress intended to leave insureds with their traditional contract remedies against their insurance companies. Such remedies include a state law breach of contract claim."); *Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 669 (9th Cir.1993) (finding lack of complete preemption because no provision in Federal Crop Insurance Act amendment places suits against agents for errors and omissions within exclusive jurisdiction of federal courts); *See also Bullinger v. Trebas*, 245 F.Supp.2d 1060, 1066 (D.N.D.2003) ("The majority of courts have held that the Federal Crop Insurance Act does not completely preempt state law causes of action.") (citing *Halfmann v. USAG Ins. Services, Inc.*, 118 F.Supp.2d 714 (N.D.Tex.2000); *Bullard v. Southwest Crop Ins. Agency, Inc.*, 984 F.Supp. 531 (E.D.Tex.1997); *Horn v. Rural Community Ins. Services*, 903 F.Supp. 1502 (M.D.Ala.1995), *Hyzer v. Cigna Prop. Casualty Ins. Co.*, 884 F.Supp. 1146 (E.D.Mich.1995); *O'Neal v. CIGNA Prop. Casualty Ins. Co.*, 878 F.Supp. 848 (D.S.C. 1995)).

The facts reveal that the Federal Crop Insurance Corporation pays defendant to service crop insurance policies issued to farmers and subsidizes a portion of each farmer's loss. The Federal Crop Insurance Corporation's payments to defendant are governed by the Standard Reinsurance Agreement, which states that only eligible crop insurance contracts will be reinsured

and subsidized under the agreement. If defendant provided plaintiffs with an insurance contract that failed to meet the requirements of the Standard Reinsurance Agreement, the Federal Crop Insurance Corporation might not indemnify defendant for the payments made to plaintiffs. However, defendant's eligibility for indemnification from the Federal Crop Insurance Corporation is irrelevant in deciding whether, as a result of its agent's error or misrepresentation, defendant is liable to plaintiffs under an equitable theory of liability.

■ The purpose of the Federal Crop Insurance Act is "to promote the national welfare by improving the economic stability of agriculture through a system of crop insurance." 7 U.S.C. § 1502; *Kansas ex rel. Todd v. United States,* 995 F.2d 1505, 1507 (10th Cir.1993). The Act promotes stability by encouraging farmers to purchase multiple peril crop insurance that protects them against loss from natural disasters. *Meyer v. Conlon,* 162 F.3d 1264, 1266 (10th Cir.1998). If plaintiffs were to prove that the misinformation provided by defendant's agent, Jay Nichols, led them to obtain less crop insurance than they believed they were receiving, reforming the contract or estopping defendant from denying them coverage would not stand as an obstacle to accomplishing Congress's objective of improving the economic stability of the agricultural system. *Schneidewind,* 485 U.S. at 300, 108 S.Ct. 1145. Furthermore, the Act does not explicitly preempt state causes of action against an insurance company that has willfully or negligently misled an insured to its detriment. Therefore, I find that plaintiffs' state law causes of action against defendant are not preempted by the Federal Crop Insurance Act.

## B. *Plaintiffs' Joint Claims for Breach of Contract and Bad Faith*

### 1. *Breach of contract*

Although plaintiffs acknowledge that the crop insurance policy issued by defendant is listed in plaintiff Passe's name only, they allege that Nichols led them to believe that the policy would cover 100% of their crop. Therefore, plaintiffs argue, (1) defendant should be estopped from arguing that the policy covered only the shares of the crop owned by plaintiff Passe or (2) the policy should be reformed to cover 100% of the crop.

#### a. Equitable estoppel

■ Estoppel is a doctrine "grounded in basic principles of justice and where applicable, can bar a party from asserting legal or equitable rights." *Peterman v. Midwestern National Ins. Co.,* 177 Wis.2d 682, 698, 503 N.W.2d 312 (1993) (citing *Kellogg v. Village of Viola,* 67 Wis.2d 345, 350, 227 N.W.2d 55, 58 (1975)). In Wisconsin, the doctrine of estoppel has been invoked in situations where the action or nonaction of one party induces another party's reliance to the latter party's detriment. *Id.* at 699, 503 N.W.2d 312.

■ However, "the general rule is well established that waiver or estoppel, based upon the conduct of an agent, is not applicable to matters of coverage." *Budget Rent–A–Car Systems, Inc. v. Shelby Ins. Group,* 197 Wis.2d 663, 671, 541 N.W.2d 178, 181 (Ct.App.1995) (citing *Shannon v. Shannon,* 150 Wis.2d 434, 450–51, 442 N.W.2d 25, 33 (1989)). "The rule in Wisconsin is that estoppel can neither create an insurance contract where none exists, nor enlarge existing coverage." *Id.* at 671, 541 N.W.2d 178; *Hoeft v. United States Fire Ins. Co.,* 153 Wis.2d 135, 144, 450 N.W.2d 459, 463 (1989). Estoppel and waiver cannot be applied to create liability

for coverage for which there was no contract. *Budget Rent–A–Car Systems, Inc.,* 197 Wis.2d at 663, 541 N.W.2d 178.

 Under Wisconsin law, the interpretation of an insurance policy is determined by application of the same rules of construction that apply to contracts generally. *Wisconsin Label Corp. v. Northbrook Property & Casualty Ins. Co.,* 2000 WI 26, ¶¶ 22–23, 233 Wis.2d 314, 607 N.W.2d 276 (2000). Therefore, the first question in construing an insurance policy is whether ambiguity exists regarding the disputed coverage issue. *Folkman v. Quamme,* 2003 WI 116, ¶ 13, 264 Wis.2d 617, 665 N.W.2d 857 (2003). Insurance policy language is ambiguous if "it is susceptible to more than one reasonable interpretation." *Id.; Danbeck v. American Family Mut. Ins. Co.,* 2001 WI 91, ¶ 10, 245 Wis.2d 186, 629 N.W.2d 150. If there is no ambiguity in the language of an insurance policy, it is enforced as written, without resort to rules of construction or applicable principles of case law. *Id.; Hull v. State Farm Mutual Automobile Ins. Co.,* 222 Wis.2d 627, 637, 586 N.W.2d 863 (1998).

 In this case, the policy issued to plaintiff Passe is unambiguous. It states, "insurance will only attach to the share of the person completing the insurance application and will not extend to any other person having a share in the crop unless the application clearly states that the insurance is requested for an entity such as a partnership or a joint venture." Plaintiff Passe's application did not disclose a joint interest in the crops she sought to insure. Therefore, by its plain terms, the policy covers only plaintiff Passe's percentage interest in the insured crop as an owner or operator at the time the insurance attached. The policy does not extend to the crop shares owned by plaintiff Buchholz

and estoppel cannot be used to create such coverage.

**b. Policy reformation**

 In opposition to defendant's motion for summary judgment, plaintiff Buchholz submitted an affidavit in which he averred that Nichols had assured plaintiffs that plaintiff Passe's application would insure 100% of plaintiffs' crop. Defendant contends that this affidavit should be disregarded by the court because plaintiff Buchholz is not a party to the contract. (Because plaintiff Passe did not submit an affidavit of her own, plaintiffs' claim for reformation would fail in the absence of plaintiff Buchholz's affidavit.) In support of this proposition, defendant cites *Restatement (Second) of Contracts* § 155, comment e, which states, "Reformation [of a contract] may be granted at the request of any party to the contract, including an intended beneficiary, or of a party's successor in interest." Although the rule makes sense as a general proposition, its application to this case would yield an absurd result. Plaintiff Buchholz is contending that because of a mutual mistake, his crops were not insured. Defendant argues that because of that alleged mistake, plaintiff Buchholz should be barred from bringing suit, although his claims otherwise meet the requirements for contract reformation under Wisconsin law. Defendant has cited no Wisconsin case in support of its position and my independent search has failed to locate any. Therefore, I find that plaintiff Buchholz's affidavit is sufficient to put into dispute the facts supporting plaintiffs' action for reformation of the policy.

 Under Wisconsin law, before a contract can be reformed, it must be shown that (1) plaintiffs and defendant's agent had a prior oral agreement and (2) through mutual mistake or negligence, the

written policy does not express the terms of the oral agreement, although it was intended to do so. *International Chiropractors Ins. Co. v. Gonstead,* 71 Wis.2d 524, 528–29, 238 N.W.2d 725, 728 (1976). Mutual mistake is established when the party applying for insurance proves that it made certain statements to the agent concerning the coverage desired, but the policy as issued does not provide that coverage. *Trible v. Tower Ins. Co.,* 43 Wis.2d 172, 182, 168 N.W.2d 148, 154 (1969). "Where the party applying for insurance states the facts to the agent and relies on him to write the policy, which will protect his interests, and the agent so understands, but fails by mistake to so write the contract, the mistake is considered mutual." *Id.* at 182–83, 168 N.W.2d 148. If the agent is an authorized agent of the insurer, the mistake is attributable to the insurer for purposes of reforming the policy. *Scheideler v. Smith & Associates, Inc.,* 206 Wis.2d 480, 487, 557 N.W.2d 445, 448 (Ct. App.1996). Less proof is required to establish mutual mistake in connection with an insurance contract than is needed for other written instruments. *Jewell v. United Fire and Casualty Co.,* 25 Wis.2d 509, 517, 131 N.W.2d 276, 280 (1964).

In actions for policy reformation, Wisconsin courts differ regarding the effect of failure to read an insurance policy. In *Jeske v. General Accident Fire & Life Assurance Corp.,* 1 Wis.2d 70, 92, 83 N.W.2d 167, 179 (1957), the Wisconsin Supreme Court held that an action for reformation of an insurance policy cannot be defeated by the failure of the proposed insureds to read or know the terms of the policy issued. However, in reviewing a one page insurance policy in *International Chiropractors Ins. Co.,* 71 Wis.2d at 530, 238 N.W.2d at 729, the Court distinguished *Jeske,* stating, "When a policy is not a multi-page, esoteric document, a failure to

read and understand the simple terms of the policy does not relieve the insured of the effect of the policy provisions." The policy at issue in this case is 21 pages long. Although the language it employs is clear to one with legal training, it is likely that a reading of the policy "would not be enlightening to the [in]sured" since it "is couched in technical terms." *Jeske,* 1 Wis.2d at 92, 83 N.W.2d 167. Therefore, plaintiffs' action for reformation of the insurance policy is not barred necessarily by their apparent failure to notice the plain terms of the policy defendant issued.

The parties dispute whether Nichols understood plaintiff's desire to insure their full crop and whether he represented to them that plaintiff Passe's application would result in the issuance of a policy that would cover both plaintiffs' shares. A reasonable jury could find that Nichols and plaintiffs were mutually mistaken about the coverage being offered to plaintiffs and that, upon discovery of the mistake, the contract should have been reformed to cover 100% of the crop. If reformation were appropriate, a jury could find that defendant breached its contract with plaintiffs when it refused to reimburse them for the loss of their crop. Therefore, I will deny defendant's motion for summary judgment with respect to plaintiffs' claim that defendant breached its contract with plaintiffs.

### 2. Bad faith claim

Under Wisconsin law, bad faith conduct by a party to a contract is a tort separate from breach of contract, intended to encourage fair treatment of the insured and penalize unfair and corrupt insurance practices. *McEvoy v. Group Health Coop. of Eau Claire,* 213 Wis.2d 507, 518, 570 N.W.2d 397 (1997). To prove bad faith, a plaintiff must show (1) the absence of a reasonable basis for denying the benefits of the policy and (2) the defen-

dant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 691, 271 N.W.2d 368 (1978).

An insurer has a reasonable basis to suspend payment if it is clear that the insurer properly investigated the claim and that the results of the investigation were subject to a reasonable evaluation and review. *Brown v. Labor and Industry Review Commission*, 2003 WI 142, ¶ 25, 267 Wis.2d 31, 671 N.W.2d 279 (2003). The reasonable or unreasonable character of the insurer's conduct is gauged by examining the circumstances existing when the insurer made its decision to deny benefits. *Id.*

In addition, a claimant must show that the insurer knew or recklessly disregarded the lack of a reasonable basis for denying benefits. *Id.*, 267 Wis.2d 31, ¶ 26, 671 N.W.2d 279. Knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of the absence of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured. *Id.* The focus for determining whether an insurer is liable for bad faith is on the sufficiency or strength of its reasoning. *Id.*

Wisconsin courts have ruled that when reasonable inquiry discloses a mutual misunderstanding, an insurance company that fails to reform the policy can be found to have acted in bad faith. *Trinity Evangelical Lutheran Church and School–Freistadt v. Tower Ins. Co.*, 2003 WI 46, ¶ 40, 261 Wis.2d 333, 661 N.W.2d 789. Plaintiffs contend that defendant should have reformed plaintiff Passe's contract in light of the mutual mistake made by plaintiffs and defendant's agent, Nichols. Because defendant did not reform the

contract and the facts supporting such a reformation are in dispute, I will deny defendant's motion with regard to plaintiffs' claim that defendant acted in bad faith by failing to provide coverage for 100% of plaintiffs' crop.

### C. *Plaintiff Passe's Claims for Breach of Contract & Bad Faith*

Plaintiff Passe contends that regardless whether the policy is reformed to include 100% of plaintiffs' crop, she should be reimbursed under the policy for the loss of her share of the crop. Furthermore, she contends that defendant acted in bad faith when it refused to reimburse her for her portion of the loss. Defendant denies that it breached its contract with plaintiff Passe because she did not own any portion of the crop she insured.

The facts reveal that defendant issued plaintiff Passe an insurance policy that, by its plain terms, covered her percentage interest in the insured crop as an owner or operator at the time the insurance attached. When plaintiff Passe made an insurance claim under the policy, she attached to her claim documents that did not list her as the owner or operator of the farm that sold the crops. Later, she supplemented these documents with bank statements and other documentation showing her joint interest in the farming enterprise that she and plaintiff Buchholz owned and operated jointly. Defendant does not dispute that plaintiffs operate a farm jointly. Nevertheless, defendant has continued to deny her claim.

To prevail on a motion for summary judgment, the moving party must show that even when all inferences are drawn in the light most favorable to the non-moving party, there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp.*

v. *Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *McGann v. Northeast Illinois Regional Commuter Railroad Corp.,* 8 F.3d 1174, 1178 (7th Cir.1993). Although defendant argues that plaintiff Passe owns no share in the crops she insured, a reasonable jury could conclude that she does. Therefore, I will deny defendant's motion with respect to plaintiff Passe's breach of contract claim.

 Plaintiff Passe contends that defendant acted in bad faith when it denied her claim. Defendant contends that it denied plaintiff Passe's claim in its entirety because the sales slips she attached to her claim form did not list her as the owner or operator of the farm that sold the crops. Had this been the only evidence available to defendant, its denial would have been both reasonable and prudent. However, as discussed above, plaintiffs met with defendant's representative in March 2004 and supplied defendant with documentation of their joint farming operation. This documentation included bank and loan statements and a farm security agreement. Plaintiff Passe contends that defendant demonstrated reckless indifference to her submitted proof, ignoring it entirely. Defendant disputes this characterization and contends that it conducted an adequate investigation by sending a representative to meet with plaintiffs and having an adjuster review the crops and crop records. Defendant does not explain why it disregarded the additional documentation submitted by plaintiff Passe. Drawing all inferences in favor of plaintiff, I conclude that a jury could find that defendant breached its contract with plaintiff Passe and acted in bad faith when it denied her claims in the face of documentary evidence demonstrating her partial ownership of the crops she had insured. Therefore, I will deny defendant's motion for summary judgment with respect to plaintiff Passe's claims of breach of contract and bad faith.

## ORDER

IT IS ORDERED that defendant Rural Community Insurance Company's motion for summary judgment is DENIED.