# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### May 22, 2012 Session

# PLANTS, INC. v. FIREMAN'S FUND INSURANCE COMPANY ET AL.

**Appeal from the Circuit Court for Warren County**
**No. 3696CV      Larry B. Stanley, Jr., Judge**

---

**No. M2011-02274-COA-R3-CV - Filed August 13, 2012**

---

This is the second of two similar but separate civil actions and appeals among the same parties. At issue is the scope of a binding arbitration clause in a federally-reinsured multiple peril crop insurance policy and the scope of federal preemption of common law claims. The insured, a nursery in Warren County, Tennessee, suffered a catastrophic loss of stock, primarily trees and shrubs, due to a severe freeze in April of 2007. The insured submitted a claim for indemnity. The adjuster determined, due to "under-reporting of inventory", that the insured was only entitled to recover $115,822. Instead of pursuing arbitration pursuant to the policy of insurance, the insured filed this action asserting common law claims against the insurer, its adjustment firm, and the independent insurance agency that solicited the policy, for negligent misrepresentation, breach of duty of care, negligence, breach of contract, and statutory bad faith. The trial court summarily dismissed the claims against the insurer and its adjustment firm finding there were no issues of material fact and the insurers were entitled to summary judgment as a matter of law because the policy mandated arbitration. On appeal, the insured contends that its state law claims are not barred by the policy. The insurer and its adjustment firm disagree contending that all claims related to the insurance policy must be submitted to arbitration and additionally assert that the insured's common law claims are preempted by federal law. We have determined the claims for breach of contract, breach of duty of care, and statutory bad faith are preempted by federal law; however, the claims for negligence and negligent misrepresentation are not preempted by federal law and these two claims do not fall within the scope of the arbitration provision. Therefore, we affirm in part, reverse in part, and remand for further proceedings in accordance with this decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part; Reversed in Part and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and BEN H. CANTRELL, SR. J., joined.

Mickey Hall, Winchester, Tennessee, for the appellant, Plants, Inc.

Jeffrey S. Dilley, Clarksdale, Mississippi, for the appellees, Fireman's Fund Insurance Company, Rural Community Insurance Company, Rural Community Insurance Services, Wheeler Insurance Agency, Inc., and Louis M. Wheeler, individually, and as agent for other defendants.

**OPINION**

This is one of two separate civil actions and appeals by the plaintiff/appellant Plants, Inc. The separate cases arise from two substantial losses to Plants' nursery stock in April of consecutive years. The first loss, which is at issue in a separate appeal, was due to a tornado in April of 2006. *See Plants, Inc. v. Fireman's Fund Insurance Company, et al.*, (*Plants I*), No. M2011-02063-COA-R3-CV, 2012 WL _____ (Tenn. Ct. App. Aug. __, 2012). The second loss, which is at issue in this appeal, was due to a severe freeze that occurred in April of 2007. The issues in both cases pertain to the same policy of insurance and the scope of the arbitration clause therein.

Plants, the owner and operator of a tree and shrub nursery in Warren County, Tennessee, was insured in 2007 under a federally-reinsured multiple peril crop insurance ("MPCI") policy[1] issued by Fireman's Fund Insurance Company ("Fireman's Fund") and serviced by Rural Community Insurance Agency, Inc. d/b/a Rural Community Insurance Services ("RCIS"). The independent agent who sold the policy is Louis M. Wheeler of Wheeler Insurance Agency, Inc.

Following the freeze, Plants submitted a claim to RCIS, who determined that Plants was only entitled to $115,822, due to an under-reporting of inventory. On October 7, 2009, Plants initiated arbitration against RCIS, however, Plants withdrew from arbitration before it occurred. Plants then filed this suit on June 18, 2010, in the Circuit Court for Warren County, against Fireman's Fund, RCIC, RCIS, Louis Wheeler, and Wheeler Insurance Agency, alleging claims for negligent misrepresentation, breach of duty of care, negligence, breach of contract, and violation of statutory bad faith pursuant to Tennessee Code Annotated § 56-7-105. All five defendants filed answers.

Three of the defendants, Fireman's Fund, RCIC, and RCIS, filed motions for summary judgment on the ground that the insurance policy required Plants first to participate in arbitration. Following a hearing, the trial court issued an order on August 25, 2011,

---

[1]MCPI policies are governed by and issued under authority of the Federal Crop Insurance Act, 7 U.S.C.A. § 1501 *et seq.* and regulations promulgated under authority of the Act.

summarily dismissing all of Plants' claims against Fireman's Fund, RCIC, and RCIS on the ground the MPCI policy required Plants submit its claims to arbitration. Neither Louis Wheeler nor Wheeler Insurance Agency moved for summary judgment; thus, Plants' claims against Mr. Wheeler and his insurance agency remain in the circuit court.

Thereafter, Fireman's Fund, RCIC, and RCIS (collectively "Defendants") filed a motion for entry of a final judgment as to them pursuant to Tennessee Rule of Civil Procedure 54.02. The court granted the motion and this appeal followed.

## ANALYSIS

In this appeal, Plants asserts that the trial court erred in granting summary judgment against Fireman's Fund, RCIC, and RCIS ("collectively Defendants") based upon the grounds that it was required to participate in arbitration. Plants contends that the trial court properly dismissed the action as the provisions of the MPCI policy mandate that all claims be submitted to arbitration. Defendants further assert that such claims are preempted by federal law governing these types of insurance policies and, therefore, Plants was precluded from bringing such claims outside of the procedures set forth in the federal statutes and regulations, which require arbitration and a judicial review of the arbitration as the exclusive remedy.

This appeal arises from the grant of summary judgment upon a legal determination that Plants was required to participate in arbitration based upon the provisions of the MPCI policy. There are no genuine issues of material fact and the issues on appeal present questions of law, upon which we review the trial court's judgment de novo with no presumption of correctness. *Martin v. Norfolk Southern Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008).

## I. FEDERAL CROP INSURANCE

Multiple peril crop insurance ("MPCI") is a federally regulated and subsidized insurance made available to farmers pursuant to the Federal Crop Insurance Act ("FCIA"), 7 U.S.C.A. § 1501 *et seq. Ledford Farms v. Fireman's Fund Ins. Co.*, 184 F. Supp. 2d 1242, 1243 (S.D. Fla. 2001). The terms and conditions of MPCI policies are mandated by the Federal Crop Insurance Corporation ("FCIC"), which is a governmental corporation and an agency of and within the United States Department of Agriculture and was created pursuant to the FCIA. *Nobles v. Rural Comty. Ins. Servs.*, 303 F. Supp. 2d 1292, 1295 (M.D. Ala. 2004); *Ledford Farms*, 184 F. Supp. at 1243. Despite the governance by the FCIC, MPCI policies can be issued by private insurance companies; however, these policies are subject to regulations and provisions promulgated by the FCIC concerning the sale, issuance, and

service of MPCI policies. *Nobles*, 303 F. Supp. 2d at 1295. All MCPI policies are "backed (reinsured) by the FCIC; all premiums collected for MPCI policies are paid to the United States government, and all claims paid under MPCI policies are paid with United States Treasury funds." *Id*.

## II. ARBITRATION PROVISION & FEDERAL PREEMPTION

The Basic Provisions of the MPCI policies contain a section entitled "Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review," which is set forth in the federal regulation 7 C.F.R. § 457.8:

(a) If you and we fail to agree on any determination made by us except those specified in section 20(d), the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose. Any mediator or arbitrator with a familial, financial or other business relationship to you or us, or our agent or loss adjuster, is disqualified from hearing the dispute.

(b) Regardless of whether mediation is elected:

(1) The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;

(2) If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve dispute through judicial review;

(3) If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must filed not later than one year after the date the arbitration decision was rendered;

(4) In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is

applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.

(c) Any decision rendered in arbitration is binding on you and us unless judicial review is sought in accordance with section 20(b)(3). Notwithstanding any provision in the rules of the AAA, you and we have the right to judicial review of any decision rendered in arbitration.
. . .

(f) In any mediation, arbitration, appeal, administrative review, reconsideration or judicial process, the terms of this policy, the Act, and the regulations published at 7 CFR chapter IV, including the provisions of 7 CFR part 400, subpart P, are binding. Conflicts between this policy and any state or local laws will be resolved in accordance with section 31. If there are conflicts between any rules of the AAA and the provisions of your policy, the provisions of your policy will control.

The trial court held that all of the state law claims asserted by Plants fell within the purview of the arbitration provision. In its complaint, Plants asserted claims for negligent misrepresentation, breach of duty of care, negligence, breach of contract, and statutory bad faith pursuant to Tennessee Code Annotated § 56-7-105. These claims stem from the alleged misrepresentations of Louis Wheeler, the agent who solicited the policy. On appeal, Plants contends that its state law claims, which arise from these alleged misrepresentations, do not fall within the arbitration provision because Plants does not make allegations that any determinations made in accordance with the insurance policy are incorrect.

In response, Defendants argue that this arbitration provision, which is a federal regulation, bars as a matter of law *any* claims against them, because it expressly provides that a policy holder's exclusive remedy for any determination relating to the MPCI policy is arbitration and judicial review of that arbitration provision. Defendants also argue that because the policy terms are defined by federal law, any state law claims against Defendants are preempted because the state law claims conflict with the federal regulations.

First, we shall address the preemption argument by Defendants. In this regard, Defendants argue that the case relied upon by Plants, which addresses complete preemption, is not on point and that Plants "confuses" complete preemption with ordinary preemption. Defendants argue that complete preemption is not at issue in this action, but rather they are asserting ordinary preemption, also known as conflict preemption. In making this argument,

Defendants point to two other federal regulations, 7 C.F.R. § 400.176 and 7 C.F.R. § 400.352, which address preemption and exclusion of state law remedies, in addition to the Basic Provisions addressing arbitration set forth in 7 C.F.R. § 457.8.

"Preemption occurs when there is an outright or actual conflict between federal and state law." *BellSouth Telecommunications, Inc. v. Greer*, 972 S.W.2d 663, 670 (Tenn. Ct. App. 1997) (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995); *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. at 368 (1986)). Preemption can also occur "by implication when compliance with both federal and state law is impossible or when state law obstructs the accomplishment of Congress's objectives." *Id*. (citing *Boggs v. Boggs,* 520 U.S. 833 (1997); *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 663 (1993); *California Fed. Sav. & Loan Ass'n. Guerra,* 479 U.S. 272, 281 (1987)). It can also arise when Congress's legislation is "so pervasive that it leaves no room for state legislative action." *Id*. (citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992); *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. at 368). Our courts should begin their inquiry with the presumption that Congress did not intend to preempt state law. *Id.* at 671. (citing *Building & Constr. Trades Council v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. at 224 (1993)). The proper approach is to reconcile the federal and state laws, rather than to seek out conflict where none clearly exists. *Id*. (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117 (1973); *Exxon Corp. v. Governor of Maryland,* 437 U.S. at 130 (1978)). "State law should be displaced by federal law only to the extent there is a conflict." *Id*. (citing *Dalton v. Little Rock Family Planning Servs.*, 516 U.S. 474, 475–77 (1996)).

In *Plants I*, we thoroughly addressed the issue of preemption and found that federal law was not in conflict with state law on the claims asserted by Plants for negligence and negligent misrepresentation. *Plants, Inc.*, 2012 WL _____, at *__. We held, however, that federal law was in conflict with state law claims for breach of contract, breach of duty of care, and statutory bad faith. *Id*. In that opinion, we first noted and discussed the decisions in *Nobles v. Rural Community Insurance Services*, 303 F. Supp. 2d 1292 (M.D. Ala. 2004); *Ledford Farms Inc. v. Fireman's Fund Ins. Co.*, 184 F. Supp. 2d 1242 (S.D. Fla. 2001); *Reimers v. Farm Credit Services AgCountry*, No. CIV. A3-00-168, 2001 WL 1820379 (N.D. S.E. Jun. 22, 2001); and *Agre v. Rain & Hail, LLC*, 196 F. Supp. 2d 905 (D. Minn. 2002), which dealt with the issue of complete preemption.[2] We noted that the vast majority of courts have rejected complete federal preemption for state law claims and acknowledged that these cases were decided prior to changes in the regulations that occurred in 2004.

We then turned to our discussion of ordinary preemption and found guidance in *Skymont Farms v. North*, No. 4:09-CV-77, 2012 WL 996619 (E.D. Tenn. Mar. 22, 2012),

---

[2]We note that in *Plants I*, the defendants appeared to advance a complete preemption argument.

which discussed the effect of the regulations promulgated by the FCIC:

> "Inclusion of one thing indicates exclusion of the other." *Agre*, 196 F. Supp. 2d at 912 n.8. The *Agre* court also looked to two regulations, 7 C.F.R. § 400.352(a) and § 400.176, but these sections have changed from what they stated in 2002 when *Agre* was decided, rendering them slightly less applicable to the current analysis. *See also Reimers*, 2001 WL 1820379, at *5 (discussing the same regulations). Section 400.352 prohibits various kinds of state action to promulgate rules and regulations that would affect crop insurance policies, and the specific references to cases in state court have been eliminated. Section 400.176 prohibits policyholders from seeking reimbursement from a state fund against insurance companies. Although these regulations do not provide the obvious support against complete preemption outlined in *Agre*, it does not follow from these specific preemptions that the entire rubric of state law claims and state court actions against the private insurance companies or insurance agents would be excluded. Indeed, the inclusion of the restrictions in § 400.176(b) in a section entitled "state action preemptions" would seem to imply that such actions against an insurance company would take place in state court and the available damages would be accordingly limited. As the *Reimers* court noted, this type of preemption is not relevant to the complete preemption inquiry because it is defensive, or simple, preemption. 2001 WL 1820379, at *5. Furthermore, as noted above, even if these regulations contained language to suggest complete preemption, a federal regulation does not carry the weight of a statute in a complete preemption analysis.

*Id*. at *6 n.6.

Using this guidance, we found no conflict between the regulations cited to by Defendants and state law claims for negligence and negligent misrepresentation. 7 C.F.R. § 400.176 prohibits claims whose basis is the policy of insurance without a prior determination by the FCIC that there was a failure to comply with the terms of the policy and such failure resulted in the insured receiving a payment less than the amount the insured was entitled. However, state tort claims for negligence, misrepresentation, and fraud do not arise from the policy of insurance itself but from alleged tortious actions taken prior to the agreement being made or that occur outside the scope of the policy. We likewise found no conflict between state law claims for negligence and negligent misrepresentation and 7 C.F.R. § 400.352, which prohibits judgments or damages "arising out of actions or inactions . . . authorized or required under the [FCIA], the regulations, any contract or agreement authorized by the [FCIA], or by regulations, or procedures issued by [the FCIC]." As the court in *Nobles* recognized, misrepresentations are not actions or inactions "required or authorized" under

the FCIA, federal regulations, or the policy provisions. *Nobles*, 303 F. Supp. 2d at 1297 (recognizing that "the key act underlying [plaintiffs'] fraud claim, for example, is not [defendant's] denial of their insurance coverage, but is instead [defendant's] act of telling them their land was insurable," which was a misrepresentation).

This same distinction was recognized by the case cited by Plants, *Buchholz v. Rural Community Insurance Company*, 402 F. Supp. 2d 988 (Wis. W.D. 2005), when addressing whether the insureds' request for contract reformation or for estoppel under state common law was preempted by the FCIC. *Id*. at 994. The insureds in *Buchholz* alleged that the agent who sold them the policy stated the policy would cover one-hundred percent of their crop shares, even if the crop was part of a joint venture, which had not been fully disclosed in accordance with federal regulations. *Id*. In response, the defendant-insurer argued that the FCIC barred any equitable remedy that would allow the insureds to receive full coverage for a joint venture they failed to disclose in accordance with federal regulations. *Id*. The court in *Buchholz* noted that federal law can preempt state law in two ways, explicitly or through actual conflict. *Id*. "A conflict will be found when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Id*. (citing *Schneidewind v. ANR Pipeline, Co.*, 485 U.S. 293, 300 (1988)).The court then cited to numerous cases that had rejected complete preemption of state common law claims. *Id*. (citing *Williams Farms of Homestead, Inc. v. Rain and Hail Ins. Servs. Inc.*, 121 F.3d 630 (11th Cir. 1997); *Holman v. Laulo-Rowe Agency*, 994 F.2d 666 (9th Cir. 1993); *Bullinger v. Trebas*, 245 F. Supp. 2d 1060 (D. ND. 2003)). The court then distinguished between actions arising from an agent acting in accordance with the insurance policy or outside of such a policy:

> The facts reveal that the Federal Crop Insurance Corporation pays defendant to service crop insurance policies issued to farmers and subsidize a portion of each farmer's loss. The Federal Crop Insurance Corporation's payments to defendant are governed by the Standard Reinsurance Agreement, which states that only eligible crop insurance contracts will be reinsured and subsidized under the agreement. If defendant provided plaintiffs with an insurance contract that failed to meet the requirements of the Standard Reinsurance Agreement, the Federal Crop Insurance Corporation might not indemnify defendant for the payments made to plaintiffs. However, defendant's eligibility for indemnification from the Federal Crop Insurance Corporation is irrelevant in deciding whether, as a result of its agent's error or misrepresentation, defendant is liable to plaintiffs under an equitable theory of liability.

*Id*. at 995. The court went on to find:

> The purpose of the Federal Crop Insurance Act is "to promote the national welfare by improving the economic stability of agriculture through a system of crop insurance." 7 U.S.C. § 1502; *Kansas ex rel. Todd v. United States*, 995 F.2d 1505, 1507 (10th Cir.1993). The Act promotes stability by encouraging farmers to purchase multiple peril crop insurance that protects them against loss from natural disasters. *Meyer v. Conlon,* 162 F.3d 1264, 1266 (10th Cir.1998).

*Id*. The court determined that allowing the insured to recover based upon the misrepresentations of the agent "would not stand as an obstacle to accomplishing Congress's objective of improving the economic stability of the agricultural system." *Id*. (citing *Schneidewind,* 485 U.S. at 300). The court also found that "the [FCIC] does not explicitly preempt state causes of action against an insurance company that has willfully or negligently misled an insured to its detriment." *Id*.

As we concluded in *Plants I*, the current arbitration provision refers to disagreements made over "determinations" made by the insurer presumably in accordance with the FCIA and FCIC regulations; however, misrepresentations regarding the policy or the applicability of a policy to a crop are distinguishable from determinations regarding the policy language and coverage under the policy. As the court recognized in *Skymont Farms*, some state law claims appear to be preempted and recoverable damages limited by the language contained in 7 C.F.R. § § 400.351 and 400.176. *Skymont Farms*, 2012 WL 996619, at *6 n.6. Specifically, it appears that the current language of the arbitration provision and these two regulations would bar a breach of contract action as that would be based upon a "determination" by the insurer and would fall within the prohibitions contained in the regulations. However, claims for negligence and misrepresentation do not conflict with these provisions.

We must also address two additional authorities Defendants reference to bolster their argument that the state law claims asserted by Plants and federal regulations are in conflict.[3] First, Defendants cite to a comment and response to the federal regulations discussing the changes that occurred in 2004. The comment and response cited by Defendants, however, bolsters the conclusion that state law claims remain viable subject to certain limitations. In response to a comment "that the proposed language does not address insurance provider determinations at all, and specifically, it does not provide any protection to the insurance provider from punitive or extra contractual damages because it only applies to appeal or administrative reconsiderations, not "legal actions" against insurance providers, " the FCIC responded:

---

[3]These two cases were not referenced in *Plants I*, thus, we address them here.

FCIC agrees that insurance providers may have been at risk for punitive or extra contractual damages in litigations even though they may not have violated FCIC's policies or procedures. This risk poses a considerable program integrity issue since it can affect the manner in which insurance providers manage their litigations and could result in increased costs to taxpayers. Therefore, FCIC has revised section 20, and made conforming amendments to 7 CFR 400.176(b) and 400.352(b)(4), to limit the imposition of punitive and other extra contractual damages, attorneys fees and other costs to those situations where FCIC has determined the insurance provider violated its policies and procedures and such violation had a monetary impact on the payment of the claim. FCIC will be making the determinations because, as authors of the policy or procedure, FCIC is in the best position to know whether an action constitutes a violation and to ensure the uniform application of the policies and procedures.

General Administrative Regulations, Catastrophic Risk Protection Endorsement; Group Risk Plan of Insurance Regulations for the 2004 and Succeeding Crop Years; and the Common Crop Insurance Regulations, Basic Provisions, 69 FR 48652-01 (Aug. 10, 2004). Defendants also point to a Final Agency Determination by the FCIC regarding an interpretation of section 20(i) of the Basic Provisions published at 7 C.F.R. § 457.8 for the 2007 crop year, which states:

(i) In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled. . .

The FCIC stated:

The provisions specify that it is only in a judicial review that producers can recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from insurance providers provided the producer obtains a determination from FCIC that the insurance provider, its agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the producer receiving an indemnity, prevented planting payment or replant payment in an amount that is less than the amount to which the producer was entitled. FCIC is responsible for making these

determinations to ensure the uniform application of the policies and procedures.

FCIC, Final Agency Determination, FAD-99 (May 4, 200), available at http://www.rma.usda.gov/regs/533/2009/fad-99.html.

We do not believe the above statement by the FCIC indicates a preemption of state law claims. As noted by the court in *Skymont Farms*, the current regulations limit the amount of damages, however, the regulations do not eclipse all state law claims. *Skymont Farms*, 2012 WL 996619, at *6 n.6.

Therefore, we hold that trial court erred as a matter of law in dismissing Plants's claims for negligence and negligent misrepresentation, but affirm the dismissal of Plants's claims for breach of contract, breach of the duty of care, and statutory bad faith pursuant to Tennessee Code Annotated § 56-7-105 as they are preempted by federal law because they pertain to actions or inactions "required or authorized" under the FCIA, federal regulations, or the policy provisions.[4]

## III.  RCIC AS A PARTY TO THE ACTION

In this appeal, Defendants also argue that RCIC was not a party to the insurance contract, RCIC had no involvement in the events at issue, and the trial court should have dismissed RCIC from this action. Defendants filed a motion for summary judgment to have RCIC dismissed, asserting that RCIC is a wholly-owned subsidiary of RCIS and it had no involvement in the issuance or servicing of the MPCI policy. In response, Plants stated that it was unfamiliar with the corporate structure of Defendants and could not respond without additional information. The trial court did not address this issue in its order dismissing Defendants. We decline to make a ruling on this issue without the trial court doing so first and remand this issue for the trial court to address.

### IN CONCLUSION

We affirm the dismissal of Plants' claims for breach of contract, breach of the duty of care, and statutory bad faith pursuant to Tennessee Code Annotated § 56-7-105; we reverse the dismissal of Plants' claims for negligent misrepresentation and negligence; and this matter is remanded to the trial court for further proceedings consistent with this opinion

---

[4]Tennessee Code Annotated § 56-7-105 sets forth a cause of action for bad faith refusal to honor a policy and thus is derivative of a determination regarding the policy itself and thus is preempted by the federal provisions.

-11-

and one-half of the costs of appeal are assessed against Plants, Inc., and one-half against Fireman's Fund Insurance Company.

_____
FRANK G. CLEMENT, JR., JUDGE